WILLIAM L. STERN (CA SBN 96105)
WStern@mofo.com
CLAUDIA M. VETESI (CA SBN 233485)
CVetesi@mofo.com
CLAIRE BONELLI (CA SBN 317735)
CBonelli@mofo.com
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, California 94105-2482
Telephone: 415.268.7000
Facsimile: 415.268.7522

VIRGINIA MARCELA CHOI (CA SBN 294659)
Vchoi@mofo.com
MORRISON & FOERSTER LLP
707 Wilshire Boulevard
Los Angeles, California 90017-3543
Telephone: 213.892.5200
Facsimile: 213.892.5454

Attorneys for Defendant
UNILEVER UNITED STATES, INC.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| KAYLEE BROWNING and SARAH BASILE, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>UNILEVER UNITED STATES, INC.,<br><br>Defendant. | Case No. 8:16-CV-2210-AG-KES<br><br>**DEFENDANT UNILEVER UNITED STATES, INC.'S NOTICE OF MOTION AND MOTION TO STRIKE THE DECLARATION OF MARK S. NESTOR, MD, PHD, FAAD**<br><br>Hearing Date: August 20, 2018<br>Time: 10:00 a.m.<br>Judge: Hon. Andrew J. Guilford<br>Ctrm: Courtroom 10D<br><br>Action filed: December 16, 2016 |

# NOTICE OF MOTION AND MOTION TO STRIKE

**TO PLAINTIFFS AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE THAT** on August 20, 2018 at 10:00 a.m. or as soon thereafter as counsel may be heard in Courtroom 10D of the United States District Court of the State of California, located at 411 West 4th Street, Santa Ana, California 92701, before the Honorable Andrew J. Guilford, Defendant Unilever United States, Inc. ("Unilever") will move, and hereby does move, to strike the Declaration of Mark S. Nestor, MD, PhD, FAAD pursuant to Fed. R. Civ. P. 56(c)(2), 37(c)(1), and 26.

Unilever brings this motion on the ground that (1) Plaintiffs unjustifiably failed to timely disclose Dr. Nestor and his declaration under Rule 26(a), (2) Plaintiffs unjustifiably failed to supplement their Interrogatory response under Rule 26(e), (3) and the Declaration of Dr. Nestor is objectionable on other, additional grounds under the Federal Rules of Evidence.

This Motion is based on this Notice of Motion and Motion, the attached Memorandum of Points and Authorities, the Declaration of Virginia M. Choi filed concurrently herewith, the records and files in this action, and such oral argument and further evidence as may be presented at the time of hearing on the Motion.

Dated: August 6, 2018   MORRISON & FOERSTER LLP

By: */s/ Virginia M. Choi*
    Virginia M. Choi
*Attorneys for Defendant
Unilever United Sates, Inc.*

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Pursuant to Rule 56(c)(2), Defendant Unilever United States, Inc. ("Unilever") objects to and moves to strike the Declaration of Mark S. Nestor, MD, PhD, FAAD ("Nestor Decl.") (ECF No. 107-3) submitted in support of Plaintiffs' Opposition to Defendant's Motion for Summary Judgment, Partial Summary Judgment, or to Strike Class Averments ("Opposition") (ECF No. 107).

In violation of Fed. R. Civ. P. 37 and 26, Plaintiffs (1) failed to timely disclose Dr. Nestor and his report before filing their Opposition; (2) refused to supplement their interrogatory responses to disclose Dr. Nestor; and (3) concealed Dr. Nestor despite knowing his identity and the substance of his report before the Opposition was due. The untimely Nestor Declaration should be stricken in its entirety for these reasons alone.

Even assuming it were timely, the Nestor Declaration fails to meet the standards under Federal Rules of Evidence 702 and 703 for expert opinions, and should be stricken on that alternative ground.

## II. FACTUAL BACKGROUND

### A. Unilever's Motion for Summary Judgment Uses No Experts.

On April 20, 2018, Unilever filed its Motion for Summary Judgment, Partial Summary Judgment, or to Strike Class Averments (ECF No. 61) ("MSJ") based on 20 facts, all but one of which cited to Plaintiffs' (i) Complaint, (ii) deposition testimony, or (iii) discovery responses. The MSJ did not rely on expert testimony.

### B. Plaintiffs' Motion to Continue—They Say They Have An Expert.

On April 30, 2018, Plaintiffs filed a Motion to deny or continue Defendant's MSJ pursuant to Rule 56(d) ("Rule 56(d) Motion"), arguing, among other things, that Plaintiffs needed additional time to conduct discovery before being able to oppose Defendant's MSJ. (ECF No. 74-1 at 1.) Additionally, Plaintiffs represented that they had "already retained an expert witness who will provide an opinion

regarding the damage caused by St. Ives prior to the deadline for expert disclosures in this case." (*Id.* at 6.) Unilever opposed that motion on the ground that (1) no amount of discovery from Unilever would prove whether or not microtears are a real condition; and (2) Unilever's surgically-narrow motion based on *Plaintiffs' facts* did not necessitate any additional discovery from Unilever except regarding Unilever's testing, on which Unilever repeatedly invited Plaintiffs to take discovery. (ECF No. 82.) In support of its opposition, Unilever submitted the Declaration of William G. Stebbins, M.D, stating that a search for the term "micro-tear" in dermatology journals yielded no results (ECF No. 82-8, ¶ 3) ("Stebbins Declaration").

### C. The Court Sets The Summary Judgment Schedule.

At the June 4, 2018 hearing on Plaintiffs' Rule 56(d) Motion, the Court set the hearing on Defendant's MSJ for August 20, 2018 and encouraged the Parties to cooperate in discovery. Further, the Court "invited" the Parties "to bring *Daubert* [motion]s," presumably assuming that experts had been exchanged or at least contemplating a cooperative exchange of expert reports prior to the completion of briefing. (*See* 6/4/2018 Hr'g Tr., ECF No. 88 at 10:25.)

### D. Unilever Offers to Exchange Experts—Plaintiffs Say No.

Following the hearing, the Parties met and conferred regarding various discovery items, including Plaintiffs' indication in a June 1 letter that they sought to depose Dr. Stebbins. (Choi Decl. ¶ 2.) During the meet and confer, Unilever clarified that Dr. Stebbins is not an expert for Unilever's MSJ, but that to the extent Plaintiffs intended to rely on an expert in their opposition, Plaintiffs and Unilever should coordinate an expert exchange and depositions before Plaintiffs filed their Opposition in order to avoid surprises on either side. Plaintiffs declined. (*Id.* ¶ 3.)

Unilever thereafter sent a follow-up communication "once more propos[ing] that the parties depose each other's witness before Plaintiffs file their opposition as follows: Plaintiffs send us their expert report in two weeks, Unilever submits a

1  rebuttal report a week after that, and the parties take their respective expert's
2  depositions a week thereafter." (*Id.*, Ex. B.)  Plaintiffs stated that they agreed "to
3  put the date for Dr. Stebbins' deposition on hold," but did not confirm whether their
4  Opposition would rely on an expert or address Unilever's proposal.  (*Id.* ¶ 4, Ex. C.)

### E. Plaintiffs Refuse to Update Their Discovery Responses.

Seeking clarity and a fair opportunity to litigate this case, Unilever sent Plaintiffs a letter on June 12, 2018 asking Plaintiffs to: (1) supplement their March 9, 2018 interrogatory responses in light of Plaintiffs' new evidence and expert testimony as referenced in their Rule 56(d) Motion; (2) confirm whether they would be relying on expert testimony in their opposition; (3) for the third time, consider Unilever's proposal for the Parties to "disclose their respective experts, exchange reports, and take depositions as soon as possible before July 30." (*Id.* ¶ 5, Ex. D.)

In the ensuing meet and confer, Plaintiffs refused to supplement their responses or to confirm whether an expert would be used in their Opposition. (*Id.* ¶ 5-6, Ex. E.)  And at a June 20, 2018 discovery conference before the Magistrate, Plaintiffs' counsel stated that "if we put out an expert report, we'll supplement and incorporate what's in there . . . we don't have an expert report yet." (*Id.* ¶ 6, Ex. F at 19:24-20:8)  While Plaintiffs may not have had a complete *report* ready, it has become clear that Plaintiffs knew that their Opposition would rely on Dr. Nestor's testimony.  Plaintiffs simply had no intent of confirming this, preferring surprise over cooperation.

### F. Plaintiff Submit A Previously-Undisclosed Expert Along With Their Opposition to Summary Judgment.

Now, Plaintiffs attempt to rely on the Nestor Declaration to oppose Unilever's MSJ.  For obvious reasons, Plaintiffs do not say when they retained Dr. Nestor or when he conducted his 14-day study.  Although Dr. Nestor's report is dated July 25, presumably it would have taken at least a few weeks to design the study, recruit candidates, run the two-week study, assess the data, and write the

DEFENDANT'S OBJECTION AND MOTION TO STRIKE DECLARATION OF MARK S. NESTOR
CASE NO. 8:16-CV-2210-AG-KES
la-1392380

3

report. The study itself likely occurred earlier.

It appears from the timing that Plaintiffs had an expert all the while, but concealed his identify so they could surprise Unilever with their Opposition Brief, and leave no time for his deposition given the one-week turn-around on Unilever's reply brief as established by the Court's scheduling order.

**III. ARGUMENT**

    **A. The Nestor Declaration Should Be Stricken in its Entirety.**

        **1. The disclosure of the Nestor Declaration is untimely.**

A party must submit its expert witness disclosures "at the times and in the sequence that the court orders." Fed. R. Civ. P. 26(a)(2)(D). Rule 37(c)(1) "gives teeth" to these requirements by providing that, "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a *motion*, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001); *See also Benjamin v. B & H Educ., Inc.*, 877 F.3d 1139, 1150 (9th Cir. 2017) (striking declarations submitted in response to cross-MSJ, where the witnesses had not been disclosed pursuant to Rule 26).

Rule 26(a)(2)(D), in turn, provides that absent a stipulation or a court order, the disclosure, including the provision of the written expert report, must be made "at least 90 days before the date set for trial or for the case to be ready for trial" or "if the evidence is intended solely to contradict or rebut evidence on the same subject matter identified by another party under Rule 26(a)(2)(B) or (C), within 30 days after the other party's disclosure."

Although the Court-ordered expert disclosure deadline in this case is November 5, 2018 (ECF No.87), that deadline governs trial, rather than an early-filed summary judgment motion. *See Taser Int'l, Inc. v. Bestex Co.*, No. CV 06-2636 PA (SHx), 2007 U.S. Dist. LEXIS 80775, at *23 (C.D. Cal. Feb. 9, 2007)

1  (striking expert declaration submitted with opposition to summary judgment, where
2  "[f]ailure to comply with the Rule 26(a)(2) deadlines for disclosing an expert, or the
3  Court's own deadlines for doing so, authorizes the Court to exclude the expert.")
4  Indeed, Plaintiffs' surprise expert disclosure in its Opposition is no less prejudicial
5  to Unilever than had it been at trial.[1]

6  Under the circumstances, Plaintiffs should have disclosed the identity of Dr.
7  Nestor and his report no later than 90 days before filing their Opposition—*i.e.*, May
8  1, 2018. Fed. R. Civ. P. 26 (a)(2)(A)-(B), (D). They did not. At a minimum,
9  Plaintiffs should have disclosed Dr. Nestor by June 13, 2018, assuming — for the
10 sake of argument only — that the Nestor Declaration was submitted to rebut the
11 Stebbins Declaration.[2] Fed. R. Civ. P. 26(2)(D)(ii) (mandating disclosure of
12 rebuttal witness "within 30 days after the other party's disclosure.")

13 Ultimately, Plaintiffs chose to surprise Unilever for the sake of surprise itself,
14 knowing well that Unilever would be unable to depose Dr. Nestor or provide expert
15 rebuttal evidence in its Reply, due just a week later. Because Plaintiffs' disclosure
16 was untimely under either standard, the Court should strike the Nestor Declaration
17 under Rule 37(c)(1) and decline to consider it in support of Plaintiffs' opposition.
18 *See Barajas v. Consol. Disposal Serv., L.L.C.*, No. SACV1600941AGRAOX, 2017
19 WL 6181674, at *3 (C.D. Cal. Sept. 15, 2017) (Guilford, J.) (declining to rely on
20 expert declarations submitted in opposition to summary judgment motion, where
21 witnesses were not properly disclosed per Rule 26(a)(2)(A)).

---

[1] Plaintiffs' belated disclosure is further contrary to this Court's counsel at the June 4 hearing that the Parties should bring Daubert motions as necessary.

[2] As Unilever explained to Plaintiffs, the Stebbins Declaration was submitted in support of Unilever's opposition to Plaintiffs' Rule 56(d) Motion—it does not figure into Unilever's MSJ. In fact, Unilever's MSJ relied entirely on facts from Plaintiffs' side of the ledger.

| | |
|---|---|
| 1 | **2.      Plaintiffs failed to supplement their Interrogatory responses to disclose Dr. Nestor and his report.** |
| 2 | |

3    Compounding the problem, and as part of their concealment strategy, Plaintiffs also refused to supplement their interrogatory responses pursuant to Rule 26(e) and disclose Dr. Nestor, further precluding their reliance on his declaration. Fed. R. Civ. P. 37(c)(1) (failure to disclose information under Rule 26(e) additional aground to exclude evidence on *motion*). Fed. R. Civ. P. 26(e)(1)(A) provides that a party "must supplement or correct its disclosure or response" "if the party learns that in some material respect the disclosure or response is incomplete or incorrect." Plaintiffs' failure to supplement was no oversight; in fact, Plaintiffs affirmatively *declined* Unilever's request to supplement.

In February 2018, Unilever propounded contention interrogatories asking Plaintiffs to explain the basis of their averment that walnut shell powder (WSP) causes skin damage.  Plaintiffs simply referred Unilever back to the bloggers cited in the Complaint: "Plaintiff's factual contentions supporting the statement that 'crushed walnut shell(s), "which has jagged edges … cause micro-tears in the skin when used in a scrub' and 'leads to acne, infection and wrinkles.'" are those asserted in paragraphs 5-11 of the Complaint."  (ECF No. 61-5, at 4:14-17.)

When Plaintiffs filed their Rule 56(d) Motion shy of two months later, they changed tact and called it "absurd" to think Plaintiffs were relying on those bloggers.  (*Cf.* ECF No. 74-1 at 6:22-23 ("Defendant refers to people quoted in the complaint as Plaintiffs' 'experts.' . . . . That is absurd.").)  In an attempt to discover what, then, Plaintiffs were relying on, Unilever asked them to supplement their responses.  Plaintiffs declined, stating they had nothing to supplement.  (Choi Decl. ¶ 6.)  This was not only false, but contrary to what Plaintiffs had represented in their Rule 56(d) Motion.  (ECF 74-1 at 6.)  Plaintiffs knew then – April 30 – that they would be relying on Dr. Nestor's testimony in their Opposition.  Yet, as late as June 20, Plaintiffs continued to represent they had no information to supplement.

### 3. The Failure to Disclose or Supplement was Not Substantially Justified or Harmless

Plaintiffs' failure to disclose and supplement was neither "substantially justified" nor "harmless." *See* Fed. R. Civ. P. 37(c)(1). Unilever repeatedly – at least 3 times – proposed a schedule for an expert exchange and depositions to take place prior to July 30. Unilever also asked Plaintiffs to supplement their interrogatory responses in light of their abandonment of the bloggers they had cited in the Complaint. Plaintiffs' refusal was a deliberate tactic, not a simple oversight.

Plaintiffs' belated disclosure is by no means "harmless." Due to the last-minute disclosure of the Nestor Declaration, Unilever has not had an opportunity to designate a rebuttal witness, have its expert review and counter the Nestor Declaration, and/or have an opportunity to depose Dr. Nestor. Allowing Plaintiffs to rely on the untimely Nestor Declaration would thus severely prejudice Unilever and its MSJ. *See Medina v. Multaler, Inc.*, 547 F. Supp. 2d 1099, 1105 n.8 (C.D. Cal. 2007) ("[F]ailure to disclose ... a likely witness before defendants' summary judgment motion was filed prejudiced defendants by depriving them of an opportunity to depose him."); *Mazed v. JP Morgan Chase Bank, N.A.*, No. SACV 11-814-JLS (ANx), 2014 U.S. Dist. LEXIS 48589, at *7 (C.D. Cal. Apr. 7, 2014) (motion to strike untimely declaration proper where Defendants thus "had no opportunity to counterdesignate rebuttal experts" or "have a meaningful opportunity to depose Plaintiff's witnesses.") The Nestor Declaration should be stricken.

### B. The Nestor Declaration is Objectionable on Other Grounds

#### 1. The Nestor Declaration is Irrelevant.

As a preliminary matter, the Nestor Declaration is irrelevant . Fed. R. Evid. 402 ("Irrelevant evidence is not admissible"); *See Van Der Valk v. Shell Oil Co.*, No. SACV03-565 JVS, 2004 U.S. Dist. LEXIS 30692, at *4 (C.D. Cal. Nov. 15, 2004). A party offering expert testimony "must show it to be both reliable and *relevant*.") (citing *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147 (1999) and

*Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 590-91 (1993) (emphasis added)).

<u>First</u>, the Complaint alleges that WSP causes "micro-tears," which is allegedly invisible to the naked eye (Compl. ¶ 3), while Dr. Nestor describes a condition called "disruption to the stratum corneum" that produces *visible* redness, which *can* be seen to the naked eye. (Nestor Decl., App. 3, p. 19.)  Much as testimony regarding sprained ankles would be irrelevant to a case about strained tendons, Dr. Nestor's testimony regarding an entirely different condition from "micro tears," is irrelevant to the case.

<u>Second</u>, even assuming that Dr. Nestor were testifying about the same condition Plaintiffs complain of, his testimony is nonetheless irrelevant because it does not support the Complaint's key averments that "St. Ives is not fit to be sold as a facial scrub" and is "completely worthless." (Compl. ¶¶ 3, 11.)  Dr. Nestor never says that the products are unfit to be used as facial scrubs or are worthless.  What he does say is that a product's fitness depends on a risk-benefit analysis, and that here, he would advise *his* patients not to use the St. Ives Apricot Scrub Products.  (Nestor Decl., ¶ 2.)  Because Dr. Nestor's risk/benefit approach does not evidence an across-the-board failure of the product to perform and instead relegates "fitness" to individual decision-making and choice, his testimony is irrelevant to Plaintiffs' case asserting that the scrubs are as worthless to everyone as are cars with faulty brakes.

**2.   Objections to Specific Statements in the Nestor Declaration.**

Unilever also objects to the following statements from the Declaration:

| Obj. No. | Decl. ¶ or Appendix Number | Basis for Defendant's Objection |
|---|---|---|
| 1. | ¶ 2 (At trial, I intend to testify as to the effects of the use of St. Ives Apricot Scrub products ("St. Ives") on facial skin. For the reasons stated herein, I conclude that use of St. Ives when used as directed leads to facial skin irritation and | **Irrelevant, lacks factual basis for opinion.** (Fed. R. Evid. 402, 702, 703). Dr. Nestor describes a different condition ("disruption-to-the-stratum-corneum," perceptible and visible to the naked eye) than the one Plaintiffs allege in the Complaint ("micro tears," imperceptible |

| | | |
|---|---|---|
| | impaired barrier function. Because I believe that the facial skin irritation and impaired barrier function problems outweigh any benefit associated with use of St. Ives as directed, I would advise my patients against using the product as a facial scrub.)<br><br>¶ **39** (In my opinion, these results indicate that the use of St. Ives Apricot Scrub is detrimental to the epidermal barrier when used as directed, and therefore, should not be recommend for use as a facial cleanser.)<br><br>**Appendix 3** | and invisible to the naked eye), and testimony about an entirely different condition is irrelevant to Plaintiffs' case.<br><br>Additionally, the testimony is irrelevant to the extent Dr. Nestor testifies that a product's fitness depends on a risk-benefit analysis and that he would advise *his* patients not to use the product, not that "St. Ives is not fit to be sold as a facial scrub" and is "completely worthless," as the Complaint alleges.<br><br>The Declaration and study (Appendix 3) are further deficient to the extent they do not provide all factual bases upon which the expert's opinion is based, including but not limited to the photographs taken to track the study subjects' appearances. |
| 2. | ¶ **21** ("Micro tears" is a non-medical term that has been used to describe disruption to the stratum corneum and other parts of the epidermis.)<br><br>¶ **25** ("It is my understanding that the term "micro-tears," as used by these physicians, is lay terminology to describe "the irritant effects and/or damage to SC functional integrity caused by physical abrading caused by scrubbing" (Decker et al. 2012). The literature has explained that "because of their irregular shape, the most abrasive scrubs are those containing ground fruit pits …" (Decker et al. 2012).) | **Lacks factual basis for opinion, lacks qualification/expertise, improper basis for expert testimony.** (Fed. R. Evid. 702, 703)**.**<br><br>Dr. Nestor's qualifications as a dermatologist do not qualify him to opine on the "lay" meaning or understanding of the term "micro tears." Dr. Nestor is not a linguist, nor has he conducted a survey regarding perceived lay meanings of the term. Dr. Nestor is not qualified to testify on the subject as an expert under the standards of Rule 702. *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 592 (1993) (expert is permitted to offer opinions that are not based on firsthand knowledge so long as the "expert's opinion [has] a reliable basis in the knowledge and experience of his discipline.")<br><br>To the extent Dr. Nestor relies on paragraphs 22-24 in forming his opinion, he does not state that "experts in [his] particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject." (Fed. R. Evid. 703). |
| 3. | ¶ **22** (For example, Dr. Sejal Shah, MD, FAAD, was recently quoted in the New York Times as stating that "Scrubs made | **Improper basis for expert testimony.** (Fed. R. Evid. 702, 703).<br><br>Dr. Nestor does not state that "experts in |

| | | |
|---|---|---|
| | from fruit pits and nut shells create small tears in the skin.")<br><br>¶ 23 (Another dermatologist, Debra Jaliman, MD, similarly told Health Magazine that "The problem with walnut scrubs is that the scrubbing beads have rough edges, which can cause micro-tears in the skin, lead to damage, and inflame comedones.")<br><br>¶ 24 (Bruce Katz, MD, a clinical professor of dermatology at Mount Sinai Medical Center, recently told Allure Magazine that vigorous use of St. Ives "can cause fissures or tears in the skin, which can lead to infection if not cared for properly." These tears, according to Dr. Katz, "are caused by the granules [used in the scrub], which have sharp edges and cut into the skin.") | [his] particular field would reasonably rely on [the] kinds of facts or data" cited in paragraphs 22-24 of his declaration "in forming an opinion on the subject." |
| 4. | ¶¶ 40-43 | **Irrelevant, improper as a matter of law.** (Fed. R. Evid. 402, *Kwan v. SanMedica Int'l.*, 854 F.3d 1088 (9th Cir. 2017)).<br><br>A private claim based on lack of prior substantiation is barred by *Kwan v. SanMedica Int'l.*, 854 F.3d 1088 (9th Cir. 2017), and any testimony in support of such a claim is improper and irrelevant as a matter of law. |

## IV.  CONCLUSION

For all the foregoing reasons, the Court should strike the procedurally improper Nestor Declaration, and decline to consider it for purposes of ruling on Unilever's MSJ.

Dated: August 6, 2018                     MORRISON & FOERSTER LLP

                                By:  */s/ Virginia M. Choi*
                                     Virginia M. Choi

                                *Attorneys for Defendant*
                                *Unilever United Sates, Inc.*