UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

| Case No. | SACV 16-02210 AG (KESx) | Date | December 10, 2018 |
|---|---|---|---|
| Title | KAYLEE BROWNING, ET AL. v. UNILEVER UNITED STATES, INC. | | |

| Present: The Honorable | ANDREW J. GUILFORD | |
|---|---|---|
| Lisa Bredahl | Not Present | |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: | |

**Proceedings:** **[IN CHAMBERS] ORDER REGARDING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (DKT. 61), PLAINTIFFS' MOTION FOR CLASS CERTIFICATION (DKT. 134), AND DEFENDANTS' MOTIONS TO STRIKE EXPERTS (DKT NOS. 143, 144, 145)**

Plaintiffs Kaylee Browning and Sarah Basile are users of Defendant's St. Ives Apricot Scrub. This "Scrub" is an exfoliant and like all such products is necessarily abrasive. Plaintiffs claim that the Scrub causes "micro-tears" and speeds up the aging process. Plaintiffs allege Unilever failed to disclose the scrub's negative side effects before selling it to the public and misled consumers into believing it was dermatologist recommended.

Plaintiffs claims are for (1) unfair and deceptive acts and practices in violation of the California Consumers Legal Remedies Act ("CLRA"); (2) violation of California's Unfair Competition Law ("UCL"); (3) fraud; (4) deceptive acts or practices in violation of New York General Business Law ("GBL") section 349; (5) false advertising in violation of New York GBL section 350; and (6) breach of the implied warranty of merchantability. (Compl., Dkt. 1; Order dismissing unjust enrichment claim, Dkt. 25) Defendant has moved for summary judgment on all six remaining claims by Plaintiffs Kaylee Browning and Sarah Basile. (Dkt. 61.) Plaintiffs later moved for class certification, and Defendants seek to strike three experts' testimony.

The Court GRANTS Defendant's motion for summary judgment (Dkt. No. 61) and DENIES the motions for class certification and motions to strike as moot (Dkt. Nos. 134, 143, 144, 145).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | SACV 16-02210 AG (KESx) | Date | December 10, 2018 |
|---|---|---|---|
| Title | KAYLEE BROWNING, ET AL. v. UNILEVER UNITED STATES, INC. | | |

## 1. LEGAL STANDARD

Summary judgment is appropriate where the record, read in the light most favorable to the non-moving party, shows that "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). Material facts are those necessary to the proof or defense of a claim, as determined by reference to substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A factual issue is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party," based on the issue. *See id.* In deciding a motion for summary judgment, "[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255. But if the evidence of the nonmoving party "is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249–50.

The burden is first on the moving party to show an absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. The moving party satisfies this burden either by showing an absence of evidence to support the nonmoving party's case when the nonmoving party bears the burden of proof at trial, or by introducing enough evidence to entitle the moving party to a directed verdict when the moving party bears the burden of proof at trial. *See Celotex*, 477 U.S. at 325; *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000). If the moving party satisfies this initial requirement, the burden then shifts to the nonmoving party to designate specific facts, supported by evidence, showing that there is a genuine issue for trial. *Celotex*, 477 U.S. at 324.

Fraudulent omission is actionable if the omission is "of a representation actually made by the defendant, or an omission of a fact the defendant was obliged to disclose." *Daugherty v. Am. Honda Motor Co., Inc.,* 144 Cal. App. 4th 824, 835 (2006). To allege a duty to disclose, a plaintiff must show that the defendant (1) is in a fiduciary relationship with the plaintiff; (2) had exclusive knowledge of material facts not known to the plaintiff; (3) actively conceals a material fact from the plaintiff; or (4) makes partial representations but also suppresses some material fact. *LiMandri v. Judkins,* 52 Cal. App. 4th 326, 336 (1997). "'[A] fact is deemed 'material,' and obligates an exclusively knowledgeable defendant to disclose it, if a 'reasonable

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | SACV 16-02210 AG (KESx) | Date | December 10, 2018 |
|---|---|---|---|
| Title | KAYLEE BROWNING, ET AL. v. UNILEVER UNITED STATES, INC. | | |

[consumer]' would deem it important in determining how to act in the transaction at issue.'" *Elias v. Hewlett–Packard* Co., No. 12–CV–00421–LHK, 2013 WL 3187319 at *11 (N.D. Cal. Jun.21, 2013) (quoting *Collins v. eMachines,* Inc., 202 Cal.App.4th 249, 256, 134 Cal.Rptr.3d 588 (2011)). Nondisclosures about safety considerations of consumer products are material. *Falk v. General Motors Corp.,* 496 F.Supp.2d 1088, 1096 (N.D.Cal.2007).

**2. ANALYSIS**

Plaintiffs' claims are based on two theories of liability: (1) Defendant failed to disclose that St. Ives Scrub caused skin damage and was unfit for use as a facial scrub, an "omission-based claim"; and/or (2) Defendant's label stating that the Scrub is "Dermatologist Tested" is misleading.

**2.1 Omission Claims**

To be actionable, an omission must be either contrary to a defendant's representation or "an omission of a fact the defendant was obliged to disclose." *Daugherty v. Am. Honda Motor Co.*, 144 Cal. App. 4th 824 (2006). Plaintiffs assert the presence of crushed walnut shell powder made St. Ives too abrasive for facial skin. (Compl. ¶ 6 .2.) The theory goes that walnut powder has jagged edges that cause micro-tears in the skin when used in a scrub, and that Unilever concealed this fact when selling St. Ives to the public. (*Id.* ¶ 3.) Plaintiffs put forward a long-term damages theory – that while injury to the skin "may not be noticeable to the naked eye . . . it nonetheless leads to acne, infection and wrinkles." (*Id.*)

This micro-tear condition is "made-up," Defendants say. (Mot. at 17.) If this is true, then Plaintiffs can't show that Unilever concealed a medical risk, a factual predicate for all of Plaintiffs' omission-based claims. (*See* Compl. ¶¶ 38, 44, 46, 55, 61, 64, 68, 81-82, 88.) At this stage, Plaintiffs must offer "significant probative evidence tending to support the complaint," so the Court considers whether Plaintiffs' micro-tear theory has real factual support. *See Gen. Bus. Sys. V. N. Philips Corp.*, 699 F.2d 965, 971 (9th Cir. 1983).

Defendant places too much weight on whether "micro-tear" is a scientific term used by medical professionals. The less superficial question is whether the term describes any actual

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | SACV 16-02210 AG (KESx) | Date | December 10, 2018 |
|---|---|---|---|
| Title | KAYLEE BROWNING, ET AL. v. UNILEVER UNITED STATES, INC. | | |

physical phenomenon – in other words, whether the walnut powder in the Scrub has been shown to tear the skin and cause damage, including "acne, infection and wrinkles." (Compl. ¶ 3.) This is the main inquiry the Court takes up here.

In opposition to Defendant's motion, Plaintiffs offer some factual support that St. Ives disrupts the stratum corneum, the skin's protective barrier. They rely extensively on the declaration of Mark Nestor, M.D/Ph.D, a dermatologist in Florida. (Nestor Decl. ¶¶ 6-7.) Nestor states that "use of St. Ives as directed leads to facial skin irritation and impaired barrier function." He refers to articles and depositions by several other doctors who agree that abrasive scrubs have rough edges and can cause fissures or tears in the skin. (*Id.* ¶¶ 22-25.) Nestor also describes a clinical study he oversaw that examined the use of St. Ives Scrub. It examined fifteen subjects over two-week periods. (*Id.* ¶¶ 26-39.) Nestor concluded from the study that using St. Ives disrupted the function of the stratum corneum, resulting in transepidermal water loss ("TEWL").

Plaintiffs also reference the deposition of Jeffrey Wolcheski, Unilver's Rule 30(b)(6) corporate representative. Wolcheski explained that over-exfoliation, or excessively removing outer skin cells, is "more likely" when a scrub contains jagged or sharp edges. (Wolcheski Dep. (Dkt. 106-3) at 58:21-59:17.) And Plaintiffs have submitted evidence under seal to show that St. Ives Scrub contains jagged walnut shell fragments. (Opp. at 14.) Having reviewed this and the other evidence submitted by Plaintiffs, they have at best shown that St. Ives Scrub *could*, in theory, alter the skin's surface.

But now Plaintiffs' omission-based claims meet a dead end. "Manufacturers are duty-bound to disclose only information about a product's safety risks and product defects." *Hodsdon v. Mars, Inc.*, 162 F. Supp. 3d 1016, 1026 (N.D. Cal. 2016). When alleging a safety hazard, the injury risk "need not have come to fruition." *Williams v. Yamaha Motor Co.*, 851 F.3d 1015, 1028 (9th Cir. 2017). Still, Plaintiffs must show a "sufficiently close nexus between the claimed defect and the alleged safety issue." *Id.* And the alleged "unreasonable safety hazard must describe more than merely 'conjectural and hypothetical' injuries." *Id.* at 1028-29 (quoting *Birdsong v. Apple, Inc.*, 590 F.3d 955, 961 (9th Cir. 2009) (dismissing claims for unreasonable safety hazard where "no customer, much less any plaintiff, experienced such a fire"). Plaintiffs' claims fail on multiple levels.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | SACV 16-02210 AG (KESx) | Date | December 10, 2018 |
|---|---|---|---|
| Title | KAYLEE BROWNING, ET AL. v. UNILEVER UNITED STATES, INC. | | |

First, Plaintiffs haven't shown that the alleged microtears themselves are a safety hazard. Indeed, Plaintiffs agree microtears are undetectable, and no consumers have complained about microtears per se. So the real injuries asserted appear to be the alleged effects of microtears – the "acne, infection and wrinkles" and "inflammation and irritation . . . [that] can accelerate the aging process." (Compl. ¶¶ 3, 5.) It's questionable whether even these would be "safety hazards." Plaintiffs' own expert concludes merely that "facial skin irritation and impaired barrier function problems outweigh any benefit associated with use of St. Ives," and that he wouldn't advise using the Scrub. (Nestor Decl. ¶ 2.) Not that the Scrub is dangerous. But in any case, Plaintiffs haven't shown a genuine factual dispute regarding these myriad effects of using St. Ives.

Next, proof of causation is especially lacking. Evidence is lacking that St. Ives, and not other products or lifestyle or sun damage or any other factor, produced acne, wrinkles, inflammation, or loss of moisture (even if these were actionable safety hazards). Plaintiffs heavily rely on consumer complaints to prove both injury and causation. But relying on such uncontrolled and inconsistent statements (not to mention hearsay), a reasonable jury couldn't find a "causal connection between the alleged defect and the alleged safety hazard." *Williams*, 851 F.3d at 1025. *See also Borkman v. BMW of North America, LLC*, 2017 WL 4082420 (Aug. 28, 2017) (adequacy of plaintiff's reliance on consumer complaints is properly resolved at summary judgment). The number of complaints per units sold is actually quite low – it has never breached the small ratio (under seal) that Unilever uses to detect consumer dissatisfaction. (Wolcheski Dep. At 180:16-17.)

Nor is Plaintiffs' expert's 2-week study, driven by this lawsuit and involving only 14 participants, enough to bring the micro-tear theory beyond the conjectural and hypothetical threshold. A key problem with Plaintiffs' theory is that it requires the factfinder to make several leaps, from using the Scrub, to incurring undetectable microtears, to a variety of injuries (acne, infection, wrinkles, *etc.*) that may have been caused by numerous other factors. *See, e.g., Williams*, 851 F.3d at 1028 (noting plaintiffs' failure to allege that the damage "would not or should not occur absent the defect"). Plaintiff's short-term clinical study does little to advance Plaintiffs' causation theory or prove their allegations of longer-term skin conditions.

**JS-6**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | SACV 16-02210 AG (KESx) | Date | December 10, 2018 |
|---|---|---|---|
| Title | KAYLEE BROWNING, ET AL. v. UNILEVER UNITED STATES, INC. | | |

Plaintiffs urge that even without proof of a safety hazard, "there is a duty to disclose defects that go to the central function of the product." (Opp. at 23, citing *Hodsdon v. Mars, Inc.*, 891 F.3d 857, 860 (9th Cir. 2018)). *Hodsdon* does not go as far as Plaintiffs say in removing the safety hazard requirement for omission-based claims. *See Hodsdon* at 860, 863. But even assuming a defect undermining the central function of a product is sufficient for an omission claim, and that St. Ives causes micro-tears, is it "unfit to be sold or used as a facial scrub"? (Compl. ¶ 11.) Again, Plaintiffs haven't shown that micro-tears themselves (as distinct from potential resulting symptoms, such as wrinkles or acne) are counter to the product's central function. Indeed, the Scrub was marketed as an exfoliant (Mot. at 25), which implies some intended resurfacing or abrasion. Plaintiffs do not address this issue or offer a description of the central function of a facial exfoliant. There is far too little for a reasonable jury to conclude that the presence of walnut shells neuters that undefined function.

Finally, Browning and Basile are asymptomatic class representatives. Even if the Court found there was a genuine dispute of fact regarding the safety hazard created by the walnut shell powder in St. Ives, it does not appear to have afflicted Browning or Basile. *See, e.g., In re Gen. Motors LLC Ignition Switch Litig.*, 257 F. Supp. 3d 372, 429-30 (S.D.N.Y. 2017) ("[p]urchasers of an allegedly defective product have no legally recognizable claim where the alleged defect has not manifested itself in the product they own.") *See also Williams*, 851 F.3d at 1028-29 (safety hazard must be more than conjectural). Browning and Basile don't claim they suffered from micro-tears, infection, or other physical ailments when they used St. Ives. *See* Browning Dep. 38:16-19, 15:25-16:14; 29:5-8, 50:24-52:24; Basile Dep. 32:9-33:9, 33:13-20, 35:21-23. Browning stated, for example, that she stopped using St. Ives because she accidentally got it in her eye. Browning Dep. 26:14-21, 38:11-15. At best, Plaintiffs assume they suffered from micro-tears which they could neither see nor feel. *Id.*

In short, Plaintiffs haven't provided sufficient evidence of a safety hazard or product defect that Defendant was required to disclose. Plaintiffs' allegations are too generalized and conjectural to survive summary judgment. The Court thus GRANTS Defendant's motion for summary judgment on all claims that rely on Plaintiffs' omission theory of liability.

**JS-6**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | SACV 16-02210 AG (KESx) | Date | December 10, 2018 |
|---|---|---|---|
| Title | KAYLEE BROWNING, ET AL. v. UNILEVER UNITED STATES, INC. | | |

Defendant brought a motion to strike the testimony of Dr. Nestor that was submitted to support Plaintiffs' opposition. But because the Court rules in Defendant's favor on summary judgment, it is unnecessary to rule on Defendant's motion to strike. (Dkt. 116.)

### 2.2 "Dermatologist Tested" Claims

There is no dispute that the St. Ives label says "Dermatologist Tested," not "Dermatologist Recommended" or "Dermatologist Approved." (PSF 1.) Still, Plaintiffs argue "Dermatologist Tested" is an actionable partial representation. *See* Opp. at 29; *GeoData Sys. Mgmt., Inc. v. Am. Pac. Plastic Fabricators, Inc.*, 2016 WL 6562064, at *13 (C.D. Cal. Apr. 21, 2016). They urge that the affirmative representation – which they don't dispute is technically true – is "materially qualified by what Unilever did not disclose," that St. Ives damages users' skin. (Opp. at 29.) The omission of this latter information purportedly makes the "Dermatologist Tested" representation likely to mislead. (*Id.*)

The Court has already found an absence of genuine factual dispute regarding Defendant's duty to disclose a safety hazard allegedly caused by St. Ives scrub. It found Defendant owed no such duty. So to the extent Plaintiffs' affirmative misrepresentation claim relies on the Court's finding of an actionable omission, it fails. And Plaintiffs admit that they "do not allege that the 'Dermatologist Tested' claim is a misrepresentation in and of itself." (Opp. at 30.) So this entire theory of liability falls flat.

The Court GRANTS summary judgment on all claims based on the theory that "Dermatologist Tested" was misleading.

### 2.3 Application of Court's Findings to Specific Claims

The Court's conclusions regarding the deficiencies in Plaintiffs' omission and "dermatologist tested" theories undermine the factual basis for all of Plaintiffs' claims.

Plaintiffs argue that Basile's claims under New York General Business Law §§ 349 and 350 do not require a showing of an unreasonable safety hazard or defect impairing a product's central

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | SACV 16-02210 AG (KESx) | Date | December 10, 2018 |
|---|---|---|---|
| Title | KAYLEE BROWNING, ET AL. v. UNILEVER UNITED STATES, INC. | | |

function. (Opp. at 32-33.) According to Plaintiffs "[a]ll that matters for purposes of materiality [under the GBL] is whether the information is something 'that a reasonable consumer would want to know.'" *See* Opp at 33; *Woods v. Maytag Co.*, 2010 WL 4314313, at *15 (E.D.N.Y. Nov. 2, 2010). They assert that Defendant's omissions "regarding the safety of St. Ives" is information that would be material and relevant to consumers, who would want to know that "a product would actually damage their skin." (Opp. at 33.)

New York law is not as broadly permissive of consumer fraud claims as Plaintiffs assert. Proving deceptive acts under GBL §§ 349 and 350 still requires proof of injury and causation, which the Court has found lacking here. *See, e.g.*, *Maurizio v. Goldsmith,* 230 F.3d 518, 521 (2d Cir.2000) (per curiam) ("To make out a prima facie case under Section 349, a plaintiff must demonstrate that (1) the defendant's deceptive acts were directed at consumers, (2) the acts are misleading in a material way, and (3) the plaintiff has been **injured as a result**.") (Emph. added). *Ss also Kickertz v. New York Univ.*, 971 N.Y.S.2d 271, 277 (App. Div. 1st Dep't 2013) ("The standard for recovery under General Business Law § 350, while specific to false advertising, is otherwise identical to that under section 349").

Plaintiffs want to distinguish between the California requirements of proving either a safety hazard or unfitness for use, on the one hand, and the New York requirement of proving any omission of material fact, on the other. There are two problems with this. First, the factual premise that St. Ives causes skin damage, making it unsafe and unfit for use as a facial scrub, is baked into Plaintiffs' GBL claims. *See* Compl. ¶¶ 64, 68. Even in their opposition to this summary judgment motion, Plaintiffs admit that the material omission that would be "relevant to consumers" under New York law concerns the "safety of St. Ives." *See* Opp. at 33. But even if Plaintiffs hadn't pled material omission based on skin damage – in other words, if "material and relevant to consumers" was truly a separate theory of liability (*id.*) – there is far too little evidence to submit to a jury. The consumer complaints and clinical study Plaintiffs offer as evidence are inadequate for the same reasons already discussed.

### 3. CLASS CERTIFICATION AND MOTIONS TO STRIKE

Because Defendant filed for summary judgment before Plaintiffs filed for class certification, the Court's order granting summary judgment applies only to the putative class representatives

**JS-6**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | SACV 16-02210 AG (KESx) | Date | December 10, 2018 |
|---|---|---|---|
| Title | KAYLEE BROWNING, ET AL. v. UNILEVER UNITED STATES, INC. | | |

Kaylee Browning and Sarah Basile. Still, at this point there is no putative class to certify, and the Plaintiffs' current class certification motion is moot. Defendant's motions to strike expert testimony offered to support class certification are also moot. The Court does not consider the merits of any of these post-summary judgment motions at this time.

Any arguments or authorities that are not discussed in this order were found to be either unpersuasive or unnecessary to the Court's conclusions.

|  | : | 0 |
|---|---|---|
| Initials of Preparer | lmb | |